UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE TUDOR CONDOMINIUM TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Nos. |
| v. | ) | 24-11760-FDS |
| | ) | 24-11762-FDS |
| WILLIAM F. ACHTMEYER, et al., | ) | 24-11765-FDS |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a case about multiple parties seeking to enforce liens on several condominium units. Over several years, a wealthy married couple, defendants William F. Achtmeyer and Allison G. Achtmeyer, purchased three units in the Tudor, a condominium located at 34 ½ Beacon Street in the Beacon Hill neighborhood of Boston. They apparently intended to renovate and combine the units into one apartment. In the middle of the renovations, however, the Achtmeyers abandoned the units and stopped paying common expense assessments to the condominium association. They also stopped making payments on the multimillion-dollar loans they took out on the properties; stopped paying real-estate taxes to the City of Boston; and stopped paying their federal income taxes, despite an apparent annual income of millions of dollars.

Plaintiff Tudor Condominium Trust is the condominium association of The Tudor. The Trust filed suit under Mass. Gen. Laws ch. 183, § 6 and ch. 254, § 5 to establish and enforce liens against the three units for the unpaid common expenses, in addition to seeking to hold the

Achtmeyers personally liable for the unpaid expenses. The Trust also joined as defendants several other parties that have interests in the units. After the Achtmeyers failed to pay property taxes on the units, defendant City of Boston conducted a tax taking of the units in January 2023, thereby obtaining "tax title" to the units;[1] defendant First Citizens Bank & Trust Company holds two mortgages on the units; and the United States has a lien against the units because the Achtmeyers also failed to pay federal income taxes for multiple years.[2]

The Achtmeyers failed to defend or otherwise appear in this suit, and therefore a default judgment will enter against them establishing their personal liability for the unpaid condominium expenses. And although this case involves multiple parties with competing claims, there remain essentially three issues for the Court's resolution. First, the Court must determine the priority of the various liens against the properties; the parties are in substantial agreement on these points, but some minor disputes remain. Second, while all parties agree that the units should be sold to satisfy the liens, they disagree about what sale procedure should be employed. The Trust argues that the properties should be sold by a judicial action pursuant to Mass. Gen. Laws ch. 254, § 5A, while First Citizens and the United States argue that the Court should appoint a receiver to manage the sale pursuant to 26 U.S.C. § 7403(d). Separately, the Trust seeks to recover from the City of Boston the common expense charges incurred since the City took tax title to the properties. The City does not dispute that it is responsible for the common expense charges, but it argues that such charges should be added to the tax title account for the units, and therefore should receive priority over all other liens as well.

---

[1] In contrast to a simple lien for unpaid property taxes, "tax title" is "best understood as legal ownership of the property subject to the owner's right of redemption." *Tallage Lincoln, LLC v. Williams*, 485 Mass. 449, 451 (2020). As a result, the City of Boston is currently the legal owner of the units.

[2] These cases were removed from Suffolk County Superior Court to this court on the basis of the claim against the United States and the government's counterclaim.

For the reasons that follow, the motions for summary judgment will be granted in part and denied in part. The Court concludes that the lien priority is as follows: first, the City of Boston for the unpaid property taxes; second, First Citizens for the unpaid mortgages; third, the United States for the unpaid income taxes; and, fourth, Tudor Condominium Trust for the unpaid common expense charges. The Court further concludes that the appointment of a receiver under 26 U.S.C. § 7403 is likely to result in a greater recovery than would a judicial sale and will therefore appoint a receiver following the parties' recommendations. There remain several disputes concerning the exact amount of each of the liens; the Court will defer resolution of those issues until such time as the units are sold, because several liens will continue accumulating interest or otherwise growing until that time. Finally, the Court finds that the Trust is entitled to a declaratory judgment against the City of Boston holding the City liable for the common expense charges incurred since January 2023, less those already paid by First Citizens.

## I.    Background

### A.    Factual Background

The following facts are undisputed unless otherwise noted.

These related cases concern three units at The Tudor, a condominium located at 34 ½ Beacon Street in Boston, Massachusetts. (Tudor Condo. Tr.'s Statement Undisputed Material Facts ("Tudor SMF") ¶ 1, Dkt. No. 73).[3] Unit 17, a/k/a "Unit 8N" or "PHN," is the subject of case 24-cv-11760; Unit 14, a/k/a "Unit 7S," is the subject of case 24-cv-11762; and Unit 15, a/k/a "Unit 7N," is the subject of case 24-cv-11765.

William and Allison Achtmeyer acquired Unit 17 on June 29, 2007. (U.S.'s Consolidated Statement Facts ("U.S. SMF") ¶ 1, Dkt. No. 91). Soon after, William Achtmeyer obtained an

---

[3] All docket numbers refer to the docket in 24-cv-11760 unless otherwise noted.

equity line of credit of $500,000 from Boston Private Bank & Trust Company, secured by a mortgage on Unit 17. (*Id.* ¶¶ 2-3; *id.*, Ex 1-B, 1-C). As of August 31, 2025, the amount owed on that note was $459,678.91. (Statement Material Facts Supp. Def. First Citizens Bank & Tr. Co.'s Mot. Summ. J. ("First Citizens SMF") ¶ 10, Dkt. No. 84).[4] Unit 17 has an 8.06% interest in the common areas and facilities of the condominium. (U.S. SMF, Ex. 1-A).

The Achtmeyers acquired Unit 15 on December 21, 2012. (*Id.* ¶ 4). Unit 15 has a 5.85% interest in the common areas and facilities of the condominium. (*Id.*, Ex. 1-D). The Achtmeyers then acquired Unit 14 on July 14, 2015. (*Id.* ¶ 5). Unit 14 has a 6.90% interest in the common areas and facilities of the condominium. (*Id.*, Ex. 1-E).

On July 8, 2015, the Achtmeyers executed an adjustable-rate note for $8,250,000 payable to Boston Private Bank & Trust Company, which was secured by mortgages on Units 14, 15, and 17. (*Id.* ¶¶ 6-7; *id.*, Exs. 1-F, 1-G). As of August 31, 2025, the amount owed on that note was $10,158,645.77. (First Citizens SMF ¶ 11).[5]

Starting in early 2022, the Achtmeyers failed to pay in full the common expense charges assessed against the units. As of August 1, 2025, they owed $221,341.02 in common expense charges, late fees, and attorney's fees on Unit 17; $157,959.87 on Unit 15; and $172,008.29 on Unit 14. (24-cv-11760 Dkt. No. 74-1; 24-cv-11762 Dkt. No. 72-1; 24-cv-11765 Dkt. No. 74-1).[6]

---

[4] This total consists of $418,717.14 in principal and interest, plus $40,621.77 in legal fees and $260 in "conversion late fees." (Aff. First Citizens Bank & Tr. Co., Ex. C, Dkt. No. 85).

[5] This total consists of $9,874,675.31 in principal and interest, $10,838.40 in legal fees, a "conversion fee" of $224,751.47, a "conversion late fee" of $31,298.57, and an "appraisal fee" of $2,000. (Aff. First Citizens Bank & Tr. Co., Ex. D).

[6] In November 2023, First Citizens paid the then-outstanding condominium fee balances for each of the units: $76,155.73 for Unit 17; $41,349.66 for Unit 15; and $56,298.73 for Unit 14. (Dkt. No. 74-2 at 1). The amounts listed above reflect these payments, and would of course be greater if they had not been made.

Under Massachusetts law, first mortgages generally have priority over liens for unpaid condominium expense charges, except for those "common expense assessments . . . which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce the lien and to the

The Achtmeyers also failed to pay real-estate taxes on the units to the City of Boston over a period of years. As a result, on December 6, 2022, the City of Boston executed instruments of taking against Units 14, 15, and 17 for unpaid property taxes, which were recorded on January 10, 2023. (Tudor SMF ¶¶ 16-17; *id.* Exs. 11-13).

Finally, the Achtmeyers also failed to pay federal income taxes for several years. As a result, they were assessed $2,519,816 in unpaid taxes for the 2018 tax year on February 17, 2020; $1,115,878 in unpaid taxes for the 2019 tax year on November 23, 2020; $1,397,271 in unpaid taxes for the 2020 tax year on November 22, 2021; and $201,415 in unpaid taxes for the 2021 tax year on May 8, 2023. (U.S. SMF ¶ 14). Federal tax liens arose on their property as of the date of assessment pursuant to 26 U.S.C. §§ 6321-22. (*Id.* ¶ 17). Notices of federal tax liens on the units at issue were recorded with the Suffolk Registry of Deeds on October 22, 2021, for the 2018 and 2019 tax years; on January 12, 2022, for the 2020 tax year; and on June 18, 2023, for the 2021 tax year. (*Id.* ¶ 18).

The 2007 and 2015 notes, and the corresponding mortgages, were originally payable to and held by Boston Private Bank & Trust Company. (First Citizens SMF ¶¶ 2-5). Boston Private Bank merged into Silicon Valley Bank in July 2021. (*Id.* ¶ 7). Silicon Valley Bank then failed in March 2023, and the FDIC was appointed as receiver. (U.S. SMF ¶ 9). First Citizens acquired Silicon Valley Bank from the FDIC later in March 2023. (First Citizens SMF ¶ 8).[7]

---

extent of any costs and reasonable attorneys' fees incurred in the action to enforce the lien." Mass. Gen. Laws ch. 183A, § 6(c). However, "payment of the assessments with respect to such six month period, and to the extent of any costs or reasonable attorneys' fees incurred in said action, shall serve to discharge such lien to the extent that such lien is prior to such mortgages." *Id.* Thus, as a result of these payments, First Citizens' mortgages have full priority over the liens for unpaid condominium expense charges.

[7] The United States disputes whether First Citizens is in fact the successor by merger of Boston Private Bank and Silicon Valley Bank, and for that reason it initially disputed whether First Citizens in fact had any interest in the 2007 and 2015 notes. (Dkt. No. 92 at 8-11). However, after First Citizens provided evidence of allonges assigning the notes to the FDIC in its capacity as receiver of Silicon Valley Bank, the United States abandoned that argument. (Dkt. No. 107-1 at 2-3).

B.     **Procedural Background**

The complaints in all three related cases were filed in Suffolk County Superior Court on May 29 and 30, 2024.  (Dkt. No. 9-1 at 2).  The complaints named as defendants William F. Achtmeyer and Allison G. Achtmeyer; First Citizens Bank & Trust Company, the United States, and the City of Boston.  The original complaints asserted two claims:  one to establish a lien on the units for unpaid common expenses and one to determine the priority of this lien as compared to the other interests in the property.  (Dkt. No. 1-3 at 3-4).

The United States removed the cases to this court on July 9, 2024.  (Dkt. No. 1).  It answered the complaint on September 6, 2024, and filed a counterclaim to enforce its tax liens against the Achtmeyers.  (Dkt. No. 10).  The Achtmeyers failed to appear, and the Court therefore entered default judgment against them on the counterclaim, finding that the United States possesses valid tax liens against all three units for unpaid taxes from the 2018, 2019, 2020, and 2021 tax years.  (Dkt. No. 45).

On April 14, 2025, Tudor Condominium Trust moved to amend the complaints to add a claim to hold the Achtmeyers personally liable for the common expense charges, as well as a claim against the City of Boston for a declaratory judgment that Boston was liable to the Trust for common expense charges assessed after the date on which Boston took tax title to the units (January 10, 2023).  (Dkt. No. 58 at 2-3).  The Court granted the motion to amend on April 15, 2025.

The amended complaints filed by the Trust include four claims.  Count 1 seeks recovery for the unpaid common expense charges from the Achtmeyers personally; Count 2 seeks to enforce the unpaid common expense charges as a lien against the units; Count 3 seeks to establish the priority of that lien as against any other interests; and Count 4 seeks a declaratory

6

judgment that the City is liable to the Trust for all common expense charges assessed against the units from January 10, 2023, to the present. (Am. Compl. ¶¶ 19-30, Dkt. No. 60).

The Achtmeyers again did not appear or otherwise defend against the amended complaint, and the Trust moved for entry of default against them on May 30, 2025. (Dkt. No. 66).

The Trust moved for summary judgment on July 24, 2025, as to Counts 1, 2, and 4 of the amended complaint. (Dkt. Nos. 72, 76). First Citizens moved for summary judgment on August 28, 2025, on the counterclaim of the United States, seeking a ruling that its mortgages on the units were entitled to priority over the tax liens under 26 U.S.C. § 6323. (Dkt. Nos. 82, 83). The United States moved for summary judgment on its counterclaim on September 18, 2025. (Dkt. Nos. 90, 92).[8]

As part of their motions for summary judgment, all three movants also sought the sale of the property to satisfy their liens. The Trust seeks a judicial sale in accordance with Mass. Gen. Laws ch. 254, § 5A, with the units still subject to the federal tax liens pursuant to 28 U.S.C. § 2410(c). (Dkt. No. 76 at 10-12). Both First Citizens and the United States seek the appointment of a receiver to oversee the sale of the property pursuant to 26 U.S.C. § 7403(d), with the property to be sold free of all other liens and encumbrances, apart from those imposed by the condominium documents. (Dkt. No. 104 at 10-11; Dkt. No. 107-1 at 5-7).

---

[8] In its motion for summary judgment, the United States argued that the mortgage did not have priority over the tax liens because First Citizens—which acquired the assets of the defunct Silicon Valley Bank, which had purchased Boston Private, the original holder of the mortgages on the units—did not actually "hold" the security interests protected by the mortgages. (Dkt. No. 92 at 8-11). First Citizens, in response to the government's motion, provided evidence that the mortgages had in fact been conveyed to it as part of its acquisition of SVB's assets. (Dkt. No. 106-2). Following the introduction of this evidence, the United States withdrew its claim that its tax liens were entitled to priority over the mortgages. (Dkt. No. 107-1 at 2.).

7

## II. <u>Standard of Review</u>

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

"Generally, in deciding cross-motions for summary judgment, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration. . . . But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them together." *ExteNet Sys., Inc. v. Village of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019) (internal citations and quotation marks omitted); *see also Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 496 (D.N.H. 1996) ("Because the issues raised in the motion and cross-motion are identical, the court will discuss and resolve [them] in unison.").

### III.   Analysis

#### A.   Tudor Condominium Trust's Motion

In its motion for summary judgment, the Trust seeks summary judgment on its claim against the Achtmeyers personally; its claim that it has a valid lien on the units; and its declaratory-judgment claim against the City of Boston seeking recovery for unpaid common expenses incurred since January 2023.

Beginning with the Trust's claim against the Achtmeyers, defendants have neither answered the complaint nor otherwise participated in this litigation. They are therefore in default, and summary judgment will be granted for the Trust on Count 1 of the amended complaint.

The Trust has also established that it has a valid lien on the units for unpaid common expenses, as well as certain other expenses incurred as a result of the Achtmeyers' delinquency. Massachusetts law provides that "[t]he organization of unit owners" of a condominium "shall have a lien on a unit for any common expense assessment levied against that unit from the time the assessment becomes due." Mass. Gen. Laws ch. 183A, § 6(a)(i). The statute also provides that "[t]he organization of unit owners may also assess any fees, attorneys' fees, charges, late charges, fines, costs of collection and enforcement, court costs, and interest . . . against the unit owner and such assessment shall constitute a lien against the unit from the time the assessment is due, and shall be enforceable as common expense assessments under this chapter." *Id.* § 6(a)(ii). The Trust has provided ledgers for each unit reflecting the total amounts assessed as of August 1, 2025, which appear to include common expense charges, late fees, and legal fees, all of which

constitute a lien against the units under Mass. Gen. Laws. ch. 183A, § 6.[9] Because there does not appear to be any dispute that all these expenses properly constitute a lien against the units, the Court will grant summary judgment for the Trust on Count 2 of the amended complaint, holding that the Trust has a lien against the units in an exact amount to be determined at the time the units are sold.[10]

Finally, the Trust is entitled to a declaratory judgment that the City of Boston is liable to it for the unpaid common expense charges assessed since January 20, 2023, when the City executed instruments of taking against each of the units. When a municipality conducts a tax taking, as the City did here by recording instruments of taking against each of the units, it "obtains 'tax title' to the property, which is best understood as legal ownership of the property subject to the owner's right of redemption.'" *Tallage Lincoln, LLC v. Williams*, 485 Mass. 449, 451 (2020). After the municipality has conducted a tax taking, but before it has foreclosed the owner's right of redemption, "so much of the provisions of any covenant or agreement running with the land as calls for the payment of money by the owner thereof shall not be enforceable against a city or town . . . except during any period in which the city or town directly or indirectly in any capacity accepts or receives the benefit of such covenant or agreement or of any right or privilege created or affected thereby." Mass. Gen. Laws ch. 60, § 77. A municipality essentially always "receives the benefit" of common expenses when it takes tax title to units in a condominium, because "[c]ommon areas of a condominium unit are inextricably connected to the condominium units themselves," which "literally could not exist without" the common areas.

---

[9] The total amounts assessed as of August 1, 2025, were $221,341.02 for Unit 17; $172,008.29 for Unit 14; and $157,959.87 for Unit 15, for a total of $551,309.18. These figures have presumably increased since August 2025. (24-cv-11760 Dkt. No. 74-1; 24-cv-11762 Dkt. No. 72-1; 24-cv-11765 Dkt. No. 74-1).

[10] The Court will address the priority of this lien later in this memorandum and opinion.

*See Town of Milford v. Boyd*, 434 Mass. 754, 758 (2001) (noting that, while not impossible, it would "be difficult to imagine a situation in which the payment of a common area charge would not benefit a town" holding tax title to a condominium unit).

In its opposition, the City does not dispute that, under the statute, it is "responsible for payment of common expenses of the condominium association from which Boston directly or indirectly benefits." (Dkt. No. 80 at 1-2). Instead, the City argues that the Trust had not provided sufficient evidence that "the monthly assessments" in fact "represent the units' proportionate shares of the common expenses" because the Trust had not provided a copy of the duly adopted annual budget. (*Id.* at 2). In its reply, the Trust provided that budget, along with an affidavit from the president of the board of trustees. (Dkt. No. 102, Exs. 1, 2). The City did not provide any response to that filing, so it is undisputed that this document in fact reflects the Trust's budget for the years in question.[11] Therefore, there is no apparent dispute that the City is liable to the Trust for the common expense charges incurred from January 20, 2023, to the present, less those charges that have already been paid by First Citizens.[12]

Finally, the Trust seeks a judicial sale of the units pursuant to Mass. Gen. Laws ch. 254, § 5A, with the units still subject to the senior liens, including the federal tax liens pursuant to 28 U.S.C. § 2410(c). As discussed below, the Court concludes that a receiver should instead be

---

[11] Furthermore, the budget and ledger appear to confirm that the charges did reflect the units' proportionate interest in the common areas. For example, in 2024 Unit 17 was assessed a total of $80,208.90 in fees, as compared to a budget of $928,902, or 8.63 percent of the total budget. That is slightly greater than the 8.09 percent interest of Unit 17 in the common areas of the building, but that difference appears to be accounted for by the various late fees and attorneys' fees assessed against the unit.

[12] Although the City is liable to the Trust for these expenses, the Supreme Judicial Court in *Boyd* noted that a municipality's "payment for common area charges can lawfully be added to" the tax title account and therefore also constitutes a lien against the units. *Boyd*, 434 Mass. at 760. Whether that additional lien amount also enjoys priority over the United States's tax liens is a more difficult question and one which the parties have not significantly addressed in their briefing. The Court will reserve the question for the time being.

11

appointed to sell the units free and clear of all encumbrances other than those imposed by the condominium documents themselves.

B. **Motions of First Citizens and the United States**

First Citizens and the United States each seek summary judgment on the government's counterclaim. Although the United States initially argued that the mortgages now held by First Citizens were not entitled to priority over the tax liens, it has now abandoned that contention. (Dkt. No. 107-1 at 2-3).

"Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *United States v. McDermott*, 507 U.S. 447, 449 (1993) (quoting *United States v. City of New Britain*, 347 U.S. 81, 85 (1954)). A federal tax lien arises when an assessment of the tax is made. 26 U.S.C. § 6322. The mortgages arose in 2007 and 2015, while the tax liens did not arise until assessments were made in 2020 (for the 2018 and 2019 tax years), 2021 (for the 2020 tax year), and 2023 (for the 2021 tax year). Therefore, the mortgages have priority over the tax liens.

There appears to be a factual dispute as to whether certain fees paid by First Citizens—"converted fees," or past-due condominium fees paid by First Citizens; late charges; and attorney's fees—are entitled to priority over the tax liens. The United States contends, and First Citizens does not appear to dispute, that "the application of § 6323(e)" to determine whether they are entitled to priority "turns on whether the IRS recorded notices of federal tax liens before First Citizens made the [relevant] disbursements." (Dkt. No. 107-1 at 3). There is no clear evidence in the record as to when these payments were made.[13] Accordingly, the Court will defer ruling

---

[13] The checks "disbursing monies from the first mortgagee to the Condominium's management company" are dated November 27, 2023, suggesting that these disbursements were likely made after the notices of federal tax

on whether these additional sums paid by First Citizens have priority over the tax liens, as do the principal and interest on the mortgages.

Finally, both First Citizens and the United States seek appointment of a receiver to manage the sale of the units free and clear of all other encumbrances. As discussed below, the Court agrees.

Therefore, both motions will be granted in part and denied in part.

C. **Lien Priority**

Before the sale contemplated by the parties, the Court must determine priority among four interests: the lien of the City for unpaid real-estate taxes; the mortgages held by First Citizens; the liens of the United States for unpaid income taxes; and the lien of the Trust for unpaid common expense charges.

Under both federal and state law, the City's lien for unpaid real-estate taxes has priority over all the others. Federal law provides that a federal tax lien "shall not be valid . . . as against"—that is, it shall have lower priority than—a lien that "secures payment of a tax of general application levied by any taxing authority based upon the value of [real] property." 26 U.S.C. § 6323(b)(6). And state law provides that a lien for unpaid condominium expenses "is prior to all other liens and encumbrances on a unit except," among others, "liens for real estate taxes and other municipal assessments or charges against the unit." Mass. Gen. Laws ch. 183A, § 6(c). Finally, as between the City and First Citizens, a lien for nonpayment of property taxes "takes priority over all other liens and claims on the property, including mortgages." *Tallage*

---

liens had been recorded. (Dkt. No. 74 at 2). But because the matter is not entirely clear, the Court will accept the government's suggestion that it defer ruling on the issue until after the units are sold.

*Lincoln*, 485 Mass. at 462. Therefore, the lien of the City for unpaid property taxes has first priority among the competing lienholders.[14]

The mortgages of First Citizens have second priority. They are also prior to the federal tax lien for the reasons discussed above, and Mass. Gen. Laws ch. 183A, § 6(c) gives them priority over the condominium expenses as well. *See* Mass. Gen. Laws ch. 183A, § 6(c) (granting priority to "a first mortgage on the unit recorded before the date on which the assessment sought to be enforced became delinquent"). Therefore, the mortgages have second priority.

The tax liens of the United States have third priority. They are junior to both the interests of the City and First Citizens for the reasons already discussed. As to the common expense charges, because there is no "provision to the contrary," priority is "governed by the common-law principle that 'the first in time is the first in right.'" *McDermott*, 507 U.S. at 449. The Trust's lien became "choate" when the Trust commenced this action on May 30, 2024, because that was the point when "the identity of the lienor, the property subject to the lien, and the amount of the lien [were] established." *City of New Britain*, 347 U.S. at 84. All three notices of federal tax liens were filed before that date.[15] Therefore, the tax liens have priority over the Trust's lien for unpaid common expense charges, which has fourth priority.

The Court is not in a position, however, to determine the exact amount of each of these liens at the present time. Many of them have presumably increased in amount from when the summary judgment briefing was filed, either due to additional charges being incurred (in the case

---

[14] As discussed above, it is unclear whether the amount of the City's lien that enjoys priority over the federal tax liens is only the sum of the unpaid property taxes, or whether it is the full value of the tax title accounts, which would include the value of the unpaid condominium expenses from the time of the tax taking once Boston pays that amount to the Trust. The Court reserves ruling on that issue at present.

[15] The notices were filed on October 22, 2021; January 12, 2022; and June 18, 2023. (U.S. SMF ¶ 18).

14

of the condominium expenses) or additional interest accruing. For that reason, the Court will reserve ruling on the exact amount of each of the liens until the units are sold and the parties can present additional evidence as to the amount of each of the liens as of that date. At such time, the Court can also resolve the issues regarding the priority of the fees paid by First Citizens and the full value of the City's tax title accounts as against the federal tax liens.

**D.**     **Sale Procedure**

Finally, the Court must determine whether the units should be sold at a judicial sale pursuant to Mass. Gen. Laws ch. 254, § 5A, with the units still subject to the senior liens, or whether a receiver should be appointed to oversee the sale of the property pursuant to 26 U.S.C. § 7403(d), with the property to be sold free of all other liens and encumbrances apart from those imposed by the condominium documents.

The Court agrees with the United States and First Citizens that a receiver should be appointed to sell the units free of all other encumbrances. Multiple other courts have concluded, under similar circumstances, that a sale conducted by a receiver is likely to result in a higher sale price than a judicial sale. *See United States v. Newman*, 699 F. Supp. 3d 81, 90 (D. Me. 2023) ("[T]he Court finds that placement of [the property] for sale with an experienced real estate broker is substantially more likely to generate a higher sales price than proceeding to public sale through the foreclosure process."); *Wilmington Savings Fund Society, FSB v. Cosmano*, 2022 WL 160286, at *5 (N.D. Ill. Jan 18, 2022) ("A private sale conducted by a receiver provides a more efficient means to extract maximum value from a single sale [as compared to a judicially-conducted sale]."); *United States v. Smith*, 2008 WL 4960430, at *12 (S.D. Ohio Nov. 19, 2008) ("[A] sale of the property on the open market may more closely approximate fair market value of the property than a judicial sale by auction . . . ."). Although the Trust correctly observes that these cases do not prove that the receiver sale in fact resulted in a greater sale price than a

15

judicial sale, they do show that numerous courts to have considered this issue have reached the same conclusion. (*See* Dkt. No. 101 at 2). And particularly for a unique, highly valuable property such as the combined units at issue in this case, the expertise provided by a person knowledgeable about the high-end real estate market in Boston seems likely to yield a greater sales price than a judicial sale managed by this Court.[16]

Therefore, the Court will appoint a receiver under 26 U.S.C. § 7403(d) to oversee the sale of the units. The parties are directed to meet and confer regarding their recommendations for whom the Court should appoint as a receiver and to file a status report with their joint recommendation no later than 21 days after the date of this order.

## IV.    Conclusion

For the foregoing reasons, the motions for summary judgment are GRANTED in part and DENIED in part. Summary judgment is granted in favor of plaintiff Tudor Condominium Trust on Counts 1, 2, and 4 of the amended complaint, and is denied to the extent that the Trust seeks a judicial sale pursuant to Mass. Gen. Laws ch. 254, § 5A. Summary judgment is granted in part and denied in part as to the counterclaim plaintiff United States and counterclaim defendant First Citizens Bank & Trust Company on the counterclaim of the United States for the reasons detailed above.

The Court will appoint a receiver under 26 U.S.C. § 7403(d) to oversee the sale of the units to satisfy the liens. The parties are directed to meet and confer concerning their recommendations for whom the Court should appoint as receiver and to file a status report with their joint recommendation no later than 21 days after this order is entered.

---

[16] Furthermore, to the extent that a judicial sale under Mass. Gen. Laws ch. 254, § 5A would leave the units still subject to the federal tax liens (which would be the case unless the government consented to a sale free of the liens under 28 U.S.C. § 2410(c)), it seems unlikely that any buyer would spend millions of dollars to purchase a property still encumbered by more than $5 million in tax liens.

**So Ordered.**

                                          /s/ F. Dennis Saylor IV
                                          F. Dennis Saylor IV
Dated: March 12, 2026                United States District Judge